DONALD E. BRYANT, d/b/a Bryant Excavating, *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF SHERMAN, Defendant-Appellant.
Fourth District    No. 4—90—0419

Opinion filed October 11, 1990.

Presney, Kelly & Presney, of Springfield (James D. Kelly, of counsel), for appellant.

Edward F. Casey, of Casey & Casey, P.C., of Springfield, for appellees.

JUSTICE LUND delivered the opinion of the court:

On May 16, 1990, the circuit court of Sangamon County granted the request of plaintiffs Donald Bryant, d/b/a Bryant Excavating, James Fleck, Doris Fleck, and Charles and Mary Lou Siebert and entered a preliminary injunction barring the enforcement of an ordinance enacted by the Village of Sherman (Village), which placed weight limits on one road within the Village limits. The Village now appeals.

The facts of this case are, for the most part, uncontested. Plaintiffs Fleck and the Sieberts have owned a sand pit located west of the Village since 1974. The only access to the pit is on Sebring Road. The eastern 3,700 feet of that road are located within the Village limits. Plaintiff Bryant has been operating a sand-hauling business from that pit since 1981. He hauls the sand in trucks which weigh in excess of 10 tons. To be economically feasible, he must haul loads which weigh another 14 or 15 tons, for which he pays the owners $10 per trip. Over the last several years, he has averaged 700 to 800 trips per year.

Within the last 10 years, residential houses have been built along the southern side of Sebring Road. There are now approximately 12 homes existing, with room for several more. Prior to 1989, the Village did little to maintain the road, but subsequently began receiving pressure to better do so. In 1989, the Village upgraded the eastern 2,200 feet of Sebring Road and placed a 10-ton limit on travel upon it. This is the only road in the Village with this weight restriction.

In November 1989, the Village sent Bryant a letter, indicating it intended to place the weight limit on the road but would issue Bryant a permit to travel the road for an annual fee of $3,000 for four years. This fee was set in response to the Village engineer's determination

that, due to Bryant's traffic, the road would have to be resealed every year rather than every three years. Bryant decided not to pay.

Therefore, in 1990, the Village enacted ordinance No. 1990—3 (Village of Sherman, Ill., Ordinance 1990—3 (1990)), imposing a 10-ton limit on trucks and commercial vehicles on Sebring Road and providing a permit can be granted to travel the road "upon such reasonable terms as the Village Board shall find appropriate." The ordinance then provided:

> "Any person or entity granted a permit for the use of Sebring Road west of Old Tipton School Road under this Section shall be responsible for payment for repair of any damages caused by the permitees [sic] use of Sebring Road west of Old Tipton School Road, and shall post, upon request of the Village of Sherman, reasonable security to hold the Village of Sherman harmless from any such damage to Sebring Road west of Old Tipton School Road, or in the alternative, the Village Board may agree' that such person or entity may reimburse the Village a specified reasonable amount for maintenance arising because of damage or wear and tear caused by the use of Sebring Road west of Old Tipton School Road by such person or entity." Village of Sherman, Ill., Ordinance No. 1990—3 (1990).

On March 26, 1990, plaintiffs filed a complaint seeking to enjoin enforcement of the ordinance, alleging the ordinance is invalid and unconstitutional. Plaintiffs also sought a temporary injunction. A hearing on the request for the temporary injunction was held on May 1, 1990. On May 16, 1990, the court entered an order granting a temporary injunction, finding the ordinance may be invalid as being neither expressly nor implicitly authorized by statute and that enforcement of the ordinance would terminate the sand-pit business during the pendency of this cause. The Village now appeals this determination.

■ Initially, the Village contends that the complaint is insufficient in that it does not plead facts which show that plaintiffs' legal remedies are inadequate and that they would suffer irreparable injury unless the injunction is issued. (See *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 377, 444 N.E.2d 205, 209.) However, while the Village filed a motion attacking the sufficiency of the complaint in the trial court, at no time did it make the specific allegations of insufficiency which it now makes. It is well settled that issues raised for the first time on appeal may not be considered. (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 303, 443 N.E.2d 575, 577.) Accordingly, this argument is properly considered waived.

■ ■ The purpose of a preliminary injunction is to preserve the

status quo pending a decision on the merits of the cause. (*In re Adoption of Scraggs* (1988), 125 Ill. 2d 382, 388, 532 N.E.2d 244, 247.) The plaintiff must establish four factors before an injunction will be granted: (1) he possesses a clearly ascertained right in need of protection; (2) he will suffer irreparable harm without the injunction; (3) there is no adequate remedy at law for his injuries; and (4) he is likely to be successful on the merits of his action. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387, 483 N.E.2d 1271, 1278.) The decision to grant or deny a preliminary injunction rests within the sound discretion of the trial court and will not be disturbed absent a showing of abuse. (*Kolstad v. Rankin* (1989), 179 Ill. App. 3d 1022, 1031, 534 N.E.2d 1373, 1379.) Accordingly, the reviewing court's role is limited to a determination of whether the court's findings are against the manifest weight of the evidence. *Kolstad*, 179 Ill. App. 3d at 1031, 534 N.E.2d at 1379.

In arguing that the decision is incorrect, the Village firstly contends that plaintiffs do in fact have an adequate remedy at law. It insists that plaintiffs can pay for the permit and then, if they prevail on the merits, they can be reimbursed.

■ However, the testimony establishes that the weight limitation and fee procedure could have a devastating impact on the business. Due to the competitive nature of the business, Bryant cannot use smaller trucks. If the fee is paid, this results in an increased cost per load of between $3.50 and $4.50. This is a considerable increase, since Bryant only pays $10 for the entire load. There is sufficient evidence to support the court's finding that no adequate remedy at law exists.

The Village next contends that plaintiffs have failed to establish that they are likely to succeed on the merits. However, before we address this assertion, it is essential to emphasize the proper focus of our inquiry. As our supreme court explained in *Buzz Barton*:

"In far too many cases the distinction between a temporary restraining order, a preliminary injunction, and a permanent injunction becomes blurred during the proceedings. What begins as a proceeding to obtain a temporary restraining order results in the issuance of an order that is in fact a preliminary injunction, and what starts as a proceeding to obtain a preliminary injunction results in an order that is in fact a permanent injunction. This blurring of the distinction between these three types of restraining orders was noted in both the majority and dissenting opinions in *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177. In a hearing on a motion for a preliminary injunction such as was held in the case before us, it is quite easy

and tempting to expand the hearing into the merits of the ultimate question as to whether a permanent injunction should issue. *Such a temptation should be resisted, and the distinction between the two writs should be maintained.*" (Emphasis added.) *Buzz Barton,* 108 Ill. 2d at 385-86, 483 N.E.2d at 1277.

█ The purpose of a preliminary injunction is not to determine controverted rights, or to decide controverted facts or the merits of the case. (*Lonergan v. Crucible Steel Co.* (1967), 37 Ill. 2d 599, 611, 229 N.E.2d 536, 542.) The plaintiff is not required to make out a case which would entitle him to judgment at trial; rather, he needs only to show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the cause can be decided on the merits. *Nestor Johnson Manufacturing Co. v. Goldblatt* (1939), 371 Ill. 570, 574, 21 N.E.2d 723, 725; *Buzz Barton,* 108 Ill. 2d at 386, 483 N.E.2d at 1277.

In the trial court, plaintiffs argued that the licensing procedure was in actuality an improper tax since it required payment to compensate the Village for wear and tear on the road. The Village responds by observing it enacted the ordinance pursuant to the provisions of section 15—316(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 15—316(c)), which specifically authorizes local authorities to put weight limitations on roads, and section 11—80—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 11—80—2), which provides that municipalities may regulate the use of the streets. It maintains the authority to enact the license provisions is an incident power to those expressly granted by the statutes and the fee is reasonably related to the purpose of the statute.

█ It is well settled that municipalities are without any inherent powers and may only exercise the powers delegated to them by the General Assembly. (*Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 537, 224 N.E.2d 793, 799; *City of Bloomington v. Wirrick* (1942), 381 Ill. 347, 352, 45 N.E.2d 852, 855.) These powers include those expressly granted and those implied powers which are necessarily incident to those expressly granted. (*Chicago Real Estate Board,* 36 Ill. 2d at 537, 224 N.E.2d at 799; *Bloomington,* 381 Ill. at 352, 45 N.E.2d at 855-56.) Thus, since a municipality has no power to impose any tax or license fee, that power must be expressly granted or necessarily implied in, or incident to, an express power. *Bloomington,* 381 Ill. at 352, 45 N.E.2d at 856.

█ When an ordinance is enacted requiring a license fee, that fee must bear a reasonable relation to the additional burdens imposed upon the municipality by the necessary expense involved in supervision

of the ordinance. (*Keig Stevens Baking Co. v. City of Savanna* (1942), 380 Ill. 303, 307, 44 N.E.2d 23, 25.) This expense has been held to include the expense of issuing a license, inspection, and supervision of the ordinance. (See *Keig Stevens*, 380 Ill. at 307, 44 N.E.2d at 25; *Chicago Cosmetic Co. v. City of Chicago* (1940), 374 Ill. 384, 394, 29 N.E.2d 495, 500.) The burden is on the party asserting the ordinance's invalidity to show the lack of a reasonable relationship. *City of Chicago v. Schall* (1954), 2 Ill. 2d 90, 91, 116 N.E.2d 872, 872.

■ The license fee in the present ordinance is specifically related to the cost of maintenance of the road due to the wear and tear caused by the truck traffic. It has nothing to do with the cost of granting the permit or the cost of inspecting, investigating, or supervising enforcement of the ordinance. The Village acknowledges that, to date, no court has held that a fee related to the cost of maintenance is proper. Thus, it is apparent by this very acknowledgement that the issue is far from clear and is properly subject to further inquiry.

■ The Village, observing that an ordinance passed pursuant to these powers is presumed to be valid (*City of Chicago Heights v. Public Service Co.* (1951), 408 Ill. 604, 609, 97 N.E.2d 807, 810), insists this presumption overcomes any question as to the statute's propriety. However, it is also well established that such an ordinance must be a reasonable exercise of that power (*Landberg v. City of Chicago* (1908), 237 Ill. 112, 117, 86 N.E. 638, 640; *City of Chicago v. Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co.* (1910), 244 Ill. 220, 226, 91 N.E. 422, 425; *Chicago National Bank v. City of Chicago Heights* (1958), 14 Ill. 2d 135, 138, 150 N.E.2d 827, 829), and that statutes granting powers to municipalities are to be strictly construed with any fair and reasonable doubt as to the power being resolved against the municipality (*Barnard & Miller v. City of Chicago* (1925), 316 Ill. 519, 522, 147 N.E. 384, 385).

It was not the trial court's function, nor is it ours, to answer the ultimate question. It is enough that a "fair question" has been raised by the party seeking the temporary injunction. Here it has been and the injunction was properly issued.

Affirmed.

KNECHT, P.J., and GREEN, J., concur.